## COVINGTON v. COVINGTON.

1. NEW TRIAL—EQUITY—CASE FOLLOWED.—A new trial may be granted on motion in an equity case, upon after-discovered testimony. *Following Durant* v. *Philpot*, 16 S. C., 116.
2. IBID.—EVIDENCE.—The newly-discovered evidence, upon which a new trial is to be granted, must have been unknown to the party, and could not have been known by reasonable diligence, must be material to the issue, and must be of such character as would in all likelihood change the result if established.

Before WATTS, J., Bennettsville, March, 1896.    Modified.

The facts are fully stated in the following decree:

In the month of May, 1895, this action was commenced by Lou B. Covington, as administratrix of the personal estate of Preston Covington, deceased, and in her own right as widow of said intestate, offering to account and praying for a partition of his real estate, the one-half to her and the other half to his collateral heirs, he having left no lineal descendants, but having left two brothers and children of one deceased brother and two deceased sisters, in all six nephews and two nieces.    The complaint alleges that Preston Covington left a small personal estate and three tracts of land, viz: 1. One tract of sixty-nine acres, more or less, called the home place.    2. A tract of sixty-seven acres, more or less.    3. A tract of 212 acres, more or less, all in Marlboro.    The joint answer of the defendants, ten in number, raises no issue, and joins in the prayer for partition and accounting.    Accordingly, on the· 8th day of June, 1895, the order for a writ in partition was granted by the Circuit Judge in term time, and on the 7th day of August, 1895, the writ was issued by the clerk, directing five commissioners named therein to execute the same, the tracts being stated therein to contain sixty-nine, sixty-five, and 212 acres, respectively.    On the 16th day of August, 1895, the commissioners made their return, allotting to the widow the sixty-nine acres, valued at $3,450, which is at the rate of

$50 per acre.    To all the other heirs—ten in number—they allotted the tract of sixty-five acres, valued at $2,600, which is $40 per acre, and the tract of woodland they returned as 230 acres, valued at $1,380, at the rate of $6 per acre; the two tracts thus allotted to the ten heirs they recommended to be sold for partition, and for the purpose of equalization they recommended that the other heirs pay to the widow $265.    The partition thus made by them was: To the widow, sixty-nine acres, $3,450; to the other heirs, sixty-five acres, $2,600; 230 acres, $1,380—total to other heirs, $3,980; total real estate, $7,430.    Widow's share, one-half, $3,715; value of her tract, $3,450—balance due by heirs, $265.    Exceptions were duly filed to this return by the ten defendants upon the grounds that the widow's tract was undervalued, and the allotments to the defendants over-valued, and because the attempt at equalization should not be made until after the sale, by which alone the true value of the lands allotted to the defendants could be ascertained.

On hearing the return, the exceptions, and argument thereon, his Honor, Judge Ernest Gary, on 26th September, 1895, confirmed the return, and decreed the equality as re-commended by the commissioners, and ordered the land to be sold in November, 1895, and that the 230 acres be sold in two or more separate tracts, if so desired by counsel or their clients.    On the 5th day of October following, the defendants' counsel served on the counsel for the widow exceptions to the decree of confirmation, and intention to appeal therefrom upon three grounds, the substance of which is, that the widow is entitled to one-half of the real estate, and the defendants to the other, and a sale of the undivided half was necessary to enable equality to be fairly decreed.

In order, however, to enhance the price of the sale of the 230 acres of woodland, the attorneys for the defend-ants had it surveyed and divided into four parts, and a plat of the same made for the use of the clerk of the court on day of sale, showing the tract to contain 237 acres. Accordingly, on the first Monday in November, the tract

was by this plat sold in four parcels.   The first offered for sale was a parcel of forty-nine acres, called tract No. 1.   The attorneys for the plaintiff and defendants and some of the defendants were present at the sale.   When the first tract of forty-nine acres was offered, Mr. Knox Livingston, as attorney for the estate of Peter T. Smith, announced from the block that he had learned that this part of the land probably belonged to the heirs of Peter T. Smith.   This was a surprise, as it is alleged, to counsel for the plaintiff and for the defendants, and to the defendants themselves.   Nevertheless, the forty-nine acres were sold, and bid off by Joel Covington, a brother of the deceased, and a defendant, for the sum of $125.   He has not complied, and will not be asked to comply with, the terms of sale.   That tract is lost to defendants.   Mr. Livingston then announced that no claim was made to the balance, and the sale proceeded. Tract No. 2, 59½ acres, brought $128; tract No. 3, sixty acres, brought $123; tract No. 4, sixty-eight acres, brought $145.   This was on the 4th day of November, and on November 6th, the attorneys for the defendants served notice of a motion for a new trial of the issues raised upon the return of the commissioners in partition, upon the ground of newly-discovered evidence, to wit: in that the sale disclosed the fact that the commissioners had greatly overvalued the so-called 230 acres, and because forty-nine acres of it was claimed by the estate of Peter T. Smith.   Inquiry was made, and the information given by Mr. Livingston led to the discovery of the fact that in 1882 Preston Covington sold and conveyed to Charles Welch seventy-one acres of land, which embraces this forty-nine acres, according to a survey made after the discovery of this deed, which has never been recorded.   The surveyor had this deed before him on this survey, made November 18, 1895, and had with him Charles Welch and Frank Stanton, who know the lines and boundaries of the deed of 1882 to Charles Welch.   The surveyor, James Kirkpatrick, made this survey, and also made the survey before the sale by which the land was sold.

He certifies that the tract returned by the commissioners as containing 230 acres, and found by him to contain 237 acres, embraced this forty-nine acres, which is the property of the estate of Peter T. Smith's heirs by purchase from Charles Welch, and that the woodland belonging to the estate of Preston Covington is by accurate calculation only 188 acres.

Accepting this as correct, and leaving undisturbed the partition as made in the return and confirmed, we have this result: tract of sixty-nine acres to widow, $3,450; to other heirs, sixty-five acres, $1,806; tract No. 1 (of the 237) forty-nine acres (lost); tract No. 2 (of the 237) 59½ acres, $128; tract No. 3 (of the 237) sixty acres, $123; tract No. 4 (of the 237) sixty-eight acres, $145; total real estate, $5,652.   Of this the widow ought in fairness to receive one-half, $2,826; but her share decreed to her is $3,715, leaving to the other heirs but $1,937—that is, nearly three-fourths to the widow and a fraction over one-fourth to the other heirs.   This, in equality, should not be, and will not be sanctioned by a court of equity, unless bound to do so by some rigid rule of practice, or unless the parties seeking relief are estopped by their own conduct.   The motion in this case by the defendants is for a new trial of the question of confirmation of the return of the commissioners, upon the ground of newly-discovered evidence, going to show a mistake of the commissioner as to the number of acres in the alleged 230 acres of woodland, and gross error as to the value of the same.   A motion of this kind in an equity cause is made, heard, and determined in the same manner as an application for a new trial in a case at law, and that is by motion, supported by affidavits, by documentary or written evidence.   It must appear that the evidence is pertinent and material, was at the previous hearing unknown to the moving parties, and could not have been discovered by the exercise of reasonable diligence.   The affidavits submitted by the defendants, the survey and certificate of the surveyor, and the newly-discovered unrecorded deed of seventy-one acres of land made by Preston Covington to Charles Welch, in 1882, satisfy me

that the evidence proposed is pertinent and material, was unknown to all the parties and their counsel and the commissioners at the time of partition, and at the hearing of the question of confirmation, and that carelessness in not discovering it until after the sale, cannot be reasonably charged against the defendants. I am satisfied, also, that the evidence is probably true—in fact, it is not denied at the hearing that the deed to Welch covers the forty-nine acres bid off by Joel Covington; but, on the contrary, was stated, and was not denied, that one of the heirs of Peter T. Smith had recently sold this land to a purchaser, and that the plaintiff's counsel drew the title deed, having before him the Welch deed as a guide—this, too, pending the controversy. The price of the 188 acres of land at the sale was less than $3 per acre; but this can scarcely be called newly-discovered evidence. It only demonstrates the hazard of accepting and confirming a partition such as this, and the chances of doing injustice thereby.

I am urged to refuse this motion upon the ground that the forty-nine acres were known to Mr. W. H. Manning and others to have belonged to P. T. Smith, who is said to have once had a steam mill on it, or to have gotten saw timber from it. In a large body of pine timber land, such as this, such a thing might have occurred without bringing home to the collateral heirs of Preston Covington the knowledge of a conveyance, and without informing them of the true dividing line, or that only 188 acres remained. Certain it is, that the commissioners in partition seem not to have known of this, and they were most of them from the neighborhood, it is to be presumed; and they went upon and examined the land, and returned it as 230 acres. The counsel in the case knew nothing of this conveyance, the surveyor knew nothing of it, nor did the heirs of Covington know of it. I must conclude from the affidavits, therefore, that it was unknown to the parties to this cause and their counsel, without blame or carelessness on their part.

As to the materiality of the evidence, there can be no

question.    The counsel for the plaintiff rely, in opposing
the motion, upon the cases of *Goulding* v. *Goulding*, in 8
Rich. Eq., page 82, and upon the case of *Buckler* v. *Far-
row*, Rich. Eq. Cases, 178.    It is sufficient to say, that
neither of these cases involves the question of after-discov-
ered evidence.    In *Goulding* v. *Goulding*, the widow ac-
cepted the return of the commissioners without objection,
and acquiesced in the confirmation for a year, and not until
the sale of the land allotted to the heirs, at an enhanced
price, did she interpose an objection and ask to share the
benefit of this increase, after a year's acquiescence in the
judgment of confirmation.    As might have been expected,
the Court refused the request.    In the case of *Buckler* v.
*Farrow*, after the commissioners had divided and equal-
ized the land, a motion was made to have the officer of the
Court, the commissioner, to review their work, and to fix
an equalization; but the Court refused, because it could
not be done under the statute and the practice of the Court.
Neither case is applicable to the one before me, because
this is a motion, upon after-discovered evidence, to reopen
the question of confirmation; and, besides, the defendants
have been most prompt, diligent, and constant in resisting
the confirmation, and, since the judgment, in seeking relief
against it.    I am not called upon to reverse Judge Gary for
supposed error committed by him with the light before
him, but only to say whether or not that confirmation
should be set aside, and the defendants be permitted to sub-
mit to the Court, at another trial, the after-discovered evi-
dence laid before me, and this privilege I feel should be
granted them.    It will be for the Court, on this new trial,
to decide the controversy according to the law and the evi-
dence.

It is, therefore, ordered, adjudged, and decreed, that the
judgment of confirmation of the return of the commission-
ers in this case, rendered and filed on the 26th day of Sep-
tember, 1895, be set aside, and a new trial of the matters
therein involved and adjudged be granted, but without

prejudice to the titles of those who purchased land at said sale, complied with the terms thereof, and received conveyances therefor.

From this decision the plaintiff appeals, on the following exceptions:

I. Because the motion for a new trial was not the proper remedy in this case.

II. Because his Honor, the presiding Judge, was without authority or jurisdiction to grant a new trial.

III. Because the matters involved in the motion for a new trial were *res adjudicata*, under the decree of Judge Gary, overruling exceptions to and confirming the return of the commissioners in partition.

IV. Because his Honor, the presiding Judge, erred in holding that the return of the commissioners in partition could be set aside and annulled, after it had been confirmed by Judge Gary.

V. Because his Honor erred in not holding that the return of the commissioners was conclusive between the parties, especially where the same had been confirmed, and no appeal taken.

VI. Because his Honor erred in not holding that when the return was made and confirmed, it became a decree of the Court, and could only be questioned as any other decree, to wit: by appeal.

VII. Because his Honor erred in not holding that, until the decree confirming the return of the commissioners was reversed or set aside, it was binding on all the parties.

VIII. Because his Honor erred in not holding that, even admitting the allegations contained in the affidavits submitted by the defendants on this motion, they had had their day in court, and could not now be heard to establish the rights of the parties.

IX. Because his Honor erred in not holding that the Court had no authority to grant a new trial, the only object and effect of which would be to attempt to re-equalize and

adjust the shares or interests of the different parties, which, it is respectfully submitted, the Court had no authority to do.

X. Because his Honor erred in not holding that, even if the matter contained in said affidavits be true, the alleged newly-discovered testimony is not material, in that it cannot affect the issues in this cause.

XI. Because his Honor erred in not holding that, by not appealing from the order confirming the return of the commissioners, and by assenting to the sale, and the order confirming the same, the defendants were estopped from asking relief in the premises.

XII. Because his Honor, the presiding Judge, erred in holding that the forty-nine acre tract was lost to the defendants, when, as matter of fact, it appears that no effort has been made to force the purchaser to comply with his bid, or to test the validity of the claim of a third party thereto.

XIII. Because his Honor erred in holding that the facts stated in the affidavits could not, with due diligence, have been ascertained; whereas it is respectfully submitted that the record of the deed from C. A. Welch to P. T. Smith, reciting the conveyance from Preston Covington to C. A. Welch and the open and notorious possession of P. T. Smith were sufficient, at least, to put the parties upon the inquiry.

XIV. Because his Honor erred in holding as matter of fact that a part of the land had been conveyed by one of the heirs of Peter T. Smith pending the controversy; whereas it is respectfully submitted that there is not a scintilla of evidence to sustain such finding.

XV. Because his Honor erred in holding that the commissioners in partition were ignorant of the conveyance from Preston Covington to P. T. Smith; whereas it is respectfully submitted there is not the slightest proof that the commissioners were themselves ignorant of the fact, and, on the contrary, it appears that one of the boundaries called for in the writ in partition was the land of P. T. Smith, and one of the commissioners owned land adjoining thereto.

· XVI. Because, even admitting that the parties to the action were not aware of the facts set forth in the affidavits submitted, his Honor erred in imputing like ignorance to the commissioners, when there is not an iota of testimony tending to establish such alleged ignorance on their part.

XVII. Because his Honor erred in holding that the commissioners had made a mistake; whereas it is respectfully submitted that no such conclusion can be drawn from the alleged newly-discovered evidence submitted on the motion for a new trial, and there is no testimony tending to show such mistake on the part of the commissioners, but the same develops, if anything, only a mistake and disappointment on the part of the defendants.

XVIII. Because his Honor erred in holding that the mistake was made by the commissioners; whereas it is respectfully submitted the mistake, if any, was the mistake of the defendants and their attorneys, and was produced by the incompetency of the surveyor employed by them to divide the land for the purposes of sale, in accordance with the power granted in Judge Gary's order.

XIX. Because there is no testimony showing, or tending to show, that the commisssoners made a mistake, or that they were guilty of fraud or corruption, and his Honor erred in granting a new trial, when such proof was not submitted to him.

XX. Because his Honor erred in admitting in testimony the *ex parte* survey and the *ex parte* statements of the surveyor employed by the defendants.

*Messrs. Knox Livingston* and *T. W. Bouchier*, for appellant, cite: *New Trial:* Rev. Stat., 2228; Code, 286, 287; Rich. Eq., 180; 1 Rich. Eq., 6; 8 Rich. Eq., 82; 17 A. & E. Ency., 777; 14 S. C., 517; 3 Rich. Eq., 541; 5 Rich. Eq., 425; 2 Hill Ch., 353; 16 S. C., 126; 14 S. C., 329; 16 Id., 554; 17 Id., 40; 19 Id., 157; 37 Id., 512. *Return of Commissioners:* 2 McC. Ch., 118; 4 DeS., 85; 1 Rich. Eq., 6; Rich. Eq. Cas., 180; 8 Rich. Eq., 82; 13 Id., 356; 30 S.

C., 459; 33 S. C., 402. *Mistake:* Bail. Eq., 343; Id., 492; 2 Pom. Eq. Jur., 839; 15 A. & E. Ency., 645; Kerr on Fraud and Mistake, 406, *et seq.;* 14 S. C., 458; 2 Strob. Eq., 154. *Newly-discovered Evidence:* 15 S. C., 40; 16 Id., 116; 33 Id., 403; 16 Ves., 350.

*Messrs. J. H. Hudson* and *H. H. Covington,* contra, cite: *New Trial:* 16 S. C., 116; 26 S. C., 581. *Newly-discovered Evidence:* Same cases and 8 S. C., 63; 19 S. C., 556; 11 Rich. Eq., 70. *Discretion:* 10 S. E. R., 963; 26 S. C., 101; 82 Ga., 242; 16 A. & E. Ency., 683, note 2.

July 21, 1896. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action, for partition of land, came on for trial before his Honor, Judge Ernest Gary, who rendered his decree on the 26th September, 1895. Defendants gave notice of appeal therefrom, but pending said appeal, he made a motion before his Honor, Judge Watts, for a new trial upon after-discovered evidence. This motion was granted by Judge Watts on 31 March, 1896, and from this order the plaintiff now appeals to this Court on twenty grounds. It will be proper that this decretal order of Judge Watts and plaintiff's exceptions thereto shall be included in the report of this case. The decree of Judge Watts fully states the history of this case, and the same need not be repeated in detail by us. The respondents, in their argument at the bar of this Court, very properly group these twenty exceptions into four propositions.

1. That Judge Watts was without jurisdiction to grant the motion for a new trial. 2. That the alleged evidence for a new trial is immaterial. 3. That due diligence might have led the respondents to have discovered it at or before the first trial. 4. That the Circuit Judge erred in receiving in evidence an *ex parte* survey and the remarks of the surveyer endorsed on the plat.

Since the case of *Durant* v. *Philpot,* 16 S. C., 116, which was decided in the year 1881, and which has since been recognized, it seems to us a waste of time for counsel

to inveigh against the practice of granting new trials in equity causes on after-discovered evidence, on motion therefor. The legislature has clothed Circuit Judges with the power to have and grant such motions. Section 195 of our Code, amongst other matters, provides: "The Court may, likewise, in its discretion, and upon such terms as may be just, allow an answer * * * and may, also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding." * * * The language of Mr. Justice (now Chief Justice) McIver, in *Durant* v. *Philpot, supra,* seems to be very direct, when he is discussing in that case, which was on the equity side of the Court of Common Pleas, the question of the procedure to be employed in making to the Court an application to be relieved against "a mistake, inadvertence, surprise or excusable neglect" in not producing at the first trial some highly important but newly-discovered evidence, by way of motion rather than by a petition for a rehearing, or by a bill of review, thus states the conclusion of this Court: "It seems to us, however, that since the abolition of the Court of Equity, and the requirement of the Constitution, in section 3, article V., that justice shall be administered in a uniform mode of pleading, without distinction between law and equity, these modes of proceeding, by a petition for rehearing and by bill of review, have become inapplicable, and that now the same results can be obtained by motion under the provisions of section 2, chap. CV., Gen. Stat., 497." It does not affect the soundness of these views so expressed that the legislature has repealed section 2, chap. CV., Gen. Stat., 497, for it will be observed that there was no provision in the repealed law relative to the form under which the desired relief was to be obtained, which was made the basis of this utterance of this Court; but, on the contrary, it was bot-

18—47

tomed on the change wrought in the mode of pleading in
our courts by section 3, article V., of the Constitution of
1868. So we find, in the case of *Hubbard* v. *Camperdown
Mills*, 26 S. C., 581, this mode of procedure was adhered
to. It seems to us that, independent and distinct from sec-
tion 195 of the Code, a court of equity in this State, or,
rather, a Circuit Judge presiding on the equity side of the
Court of Common Pleas, is invested with the power of
granting new trials in such a cause without adopting the
old process of a petition for rehearing or a bill of review.
On the law side such relief is granted on motion. Since
the Constitution has abolished the distinction between law
and equity, so far *as pleadings* are concerned, this result is
almost necessary. What principle guides courts in grant-
ing the relief sought? In the language of Mr. Justice Mc-
Iver, in *Durant* v. *Philpot, supra,* in answering the objec-
tion that "one Circuit Judge has no authority to reverse
and nullify the decision or decree of another Circuit Judge,
as was done by the order granting a new trial in this in-
stance," he thus states the principle: "It is quite manifest
that Judge Mackey, in granting the motion for a new trial,
does not undertake to reverse or nullify the decision or de-
cree of Judge Thomson. The latter rested his decision
solely upon the ground that the evidence, as presented to
him, satisfied his mind that there was no agreement to as-
sign the mortgage until after the debt secured by it had
been paid by the mortgagor, and, therefore, that the assign-
ment was a nullity, there being then nothing to assign.
Judge Mackey, without pretending to controvert or ques-
tion the correctness of this conclusion of fact on the testi-
mony before Judge Thomson, and without questioning the
conclusion of law deduced therefrom—indeed, admitting
the correctness of the law laid down—simply holds that
the newly-discovered evidence would have a very important
bearing upon the question of fact, which was made the
basis of the former decision, and would, probably, tend to
induce a different conclusion, and grants the motion for a

new trial in order that the parties may have the opportunity of introducing this newly-discovered evidence. He does not grant the motion because of any error committed by Judge Thomson, but solely because of the discovery, since the former trial, of certain evidence which, in his judgment, was well calculated to influence the result, and show that the former decision was erroneous—not because of any fault or error in the Judge who rendered the former decision, but because of the absence of that full light which subsequent discoveries have enabled the parties to shed upon the questions of fact involved." Now, in the case at bar, assuming, for the present, the existence of valid newly-discovered evidence, Judge Watts in no wise intends to infringe, nor does he infringe, upon the decree of Judge Ernest Gary, so far as his conclusions of fact issuing from the testimony adduced before the latter, or his conclusions of law deduced therefrom, are concerned; but he virtually says: "Here is some newly-discovered evidence since that trial that, in my judgment, has a direct bearing upon the rights of the parties, and, in my judgment, if this testimony had been before Judge Gary, it would have induced him to reach a different conclusion. If this testimony had been in hand at the first hearing, there would have been no excuse for the failure to have introduced it, but it has been discovered, after reasonable diligence used at the first hearing, since such hearing, and, therefore, I hold it must be given an opportunity for consideration, it having been brought to my attention by motion, after due notice, accompanied by affidavits in support thereof." Let us go a step further and see what this after-discovered testimony is, and what relation it bears to the issues in the case at bar. The complaint sets out that the real property to be partitioned was to be divided amongst the parties so as to give the plaintiff one-half thereof and the remaining half to the defendants, and consisted of three tracts of land—one tract, containing sixty-nine acres, "more or less," known as the "home place;" one tract, containing sixty acres, "more or

less," cultivated in 1893 by Lewis Covington; and one other tract, containing 212 acres, "more or less," bounded by lands of James McRae and others (this last tract is called the "woodland tract"). The answer admitted this statement as to the tracts and acreage of each. When the writ of partition is issued, these tracts, respectively, are said to contain "sixty-nine acres," "sixty-five acres," and "212 acres." In the return of the commissioners to the writ of partition, these tracts, respectively, are stated to contain "sixty-nine acres," "sixty-five acres," and "230 acres," and they recommend that the widow receive the "sixty-nine acres," at a valuation of $3,450, and that the "sixty-five acres" and "230 acres," which, in the aggregate, they value at $3,980, be allowed to the defendants, to be sold for partition amongst them. When Judge Gary was considering this return, these tracts were considered as sixty-nine acres, sixty-five acres, and *230 acres.* The objections urged against the confirmation of the return were: 1st. That the homestead assigned to the plaintiff at $3,450 should be assigned at $4,140. 2d. That the whole three tracts should have been sold and the proceeds divided. 3d. That it was error to attempt partition before sale. All these exceptions the Circuit Judge overruled, and confirmed the return. It should have been stated, the defendants were required by the return to pay plaintiff $265, to equalize the partition. Now, the evidence after-discovered is, that the tract of land which was returned by the commissioners as containing 230 acres, in fact only contained 188 acres; that the fact that the intestate had, in his lifetime, sold forty-two acres off of the 230-acre tract, was not discovered by the defendants until on the day of sale, a month after the decree; and that the deed of the intestate by which he conveyed the forty-two acres off of the 230 acres was not recorded in the office of the register of mesne conveyance for Marlboro County. When we recall that the commissioners in partition returned said tract as containing 230 acres, and placed value thereon equal to $6 per acre, if they valued this tract at

$1,380, and that it was in this way that defendants were made to appear to receive $265 in value of lands more than the plaintiff received, and that this knowledge would have been made manifest by the intestate's deed for the forty-two acres, the existence of which the defendants were excusably ignorant until after the decree of Judge Gary, it does seem that Judge Watts was justified in rendering the conclusion that a new trial ought to be ordered, and he accordingly did so.   We cannot sustain these exceptions up to this point certainly.

We will now examine the second group of exceptions. The newly-discovered evidence is required to be subjected to the severest scrutiny by the Circuit Judge—for it is no light and commonplace matter to grant a new trial.   On the contrary, it is a solemn and responsible act, and must only be done in those instances where such newly-discovered evidence was unknown to the party offering it, at the first trial—this ignorance of its existence must not be the result of a want of reasonable diligence; the evidence in question must be material to the issues, and must be of such character as would, in all likelihood, change the result if established.   Did the newly-discovered evidence comply with all these requisites?  We think it did; for these reasons: We think this evidence was unknown to these defendants at the time of the first trial, the deed was unrecorded, and in the possession of others than parties to the suit; this deed took off forty-two acres of land that entered into the estimate of the commissioners in partition, for they returned that tract, not as 188 acres, *more or less*, but absolutely, as *230 acres*.   It is true, that this was an enlargement of the acreage upon the estimate thereof in the pleadings and in the writ itself, and might have stimulated inquiry, but neither plaintiff nor defendants seems to have made the inquiry at that time.   They and the Court acted upon it as *230 acres*.  Now, forty-two acres is nearly the one-fifth part of the 230 acres, and it is idle to say that such a deficit is immaterial.   By the estimate of the commissioners at $6 per

acre, it amounted to $252, which amount was nearly suffi-
cient to wipe out the $265, which defendants were required
to pay to the plaintiff for purposes of equalization. At
this point our doubts arise under the order of Judge Watts
for a new trial. By its terms, such order requires that such
new trial shall be "without prejudice to the titles of those
who purchased lands at such sale, complied with the terms
thereof, and received conveyances therefor." By the report
of the clerk on sales, it seems that every purchaser has
complied by paying his entire bid in cash, by consent of
the defendants, and each purchaser has received title,
except that the purchaser of the forty-two acres (that did
not belong to the estate of the intestate) has been excused
from paying and taking title. What practical advantage
can accrue to the defendants under this order of Judge
Watts with its restrictions? It seems clear to us that, by
these acts of the defendants, they have taken it out of their
power and that of the Court (for the defendants did not
appeal from the order of Judge Watts) to deal with the two
tracts of land that had been assigned to them in this parti-
tion suit. Can they, therefore, interfere .with the land
assigned, in partition, to the plaintiff? We think not. So,
therefore, it seems to us that, in equity, and this is a suit in
equity, they should only be allowed on this new trial to
show this forty-two acres did not belong to the estate of
their intestate, and that the commissioners estimated its
value, as they did the other four-fifths of the woodland
tract of 230 acres, as they found its acreage to be. And
that when this is done, if these facts be established, a credit
of $252 be allowed on the $265, allowed to the plaintiff to
be paid by the defendants for the purposes of equalization.
The decretal order of Judge Watts should be amended or
modified to this extent.

The third and fourth divisions under which we proposed
to consider the appellant's exceptions do not present any
questions that are not already disposed of under what we
have hereinbefore stated.

It is the judgment of this Court, that the order of Judge Watts, granting a new trial, be modified as herein required; but that if the appellant will remit the sum of $252, so that the same shall be entered as a credit upon the sum of $265, the defendants were ordered to pay her for equalization in partition, within ten days after this judgment is remitted to the Circuit Court, then, and in that event, Judge Watts' order for a new trial is reversed.